CARROLL D. BESADNY, Secretary Department of Natural Resources
Game wardens employed by the Department of Natural Resources are authorized to enforce state laws relating to conservation which include the fish and game laws set out in ch. 29, Stats. The penalty for an initial violation of many of the provisions of ch. 29, Stats., is a forfeiture which may be imposed in a civil lawsuit. Sections 23.50 through 23.85, Stats., set out a procedure for the initiation and prosecution of a civil action based upon such a violation. A violation of ch. 29, Stats., which would ordinarily result in a civil forfeiture may, however, be prosecuted as a criminal matter in particular circumstances in that sec. 29.995, Stats., imposes a criminal penalty upon one who repeatedly violates fish and game laws.
You have requested my opinion with respect to the applicability of constitutional and procedural protections afforded to one accused of a crime when an otherwise civil forfeiture violation becomes a criminal violation by virtue of sec. 29.995, Stats. Specifically you ask:
 1. May a citation issued pursuant to sec. 23.62, Stats., serve as a pleading in a criminal prosecution?
 2. At what point do the protections afforded the accused in a criminal case have application to a prosecution based upon sec. 29.995, Stats.?
 3. Do the answers to the above questions change if, at the time a citation is issued, the officer is aware that the person may have previously violated the law so as to be subject to prosecution under sec. 29.995, Stats.? *Page 137 
A citation issued pursuant to sec. 23.62, Stats., cannot be used to initiate a criminal prosecution. A crime is defined at sec. 939.12, Stats., as conduct which is prohibited by law and punishable by a fine or imprisonment or both. Section 29.995, Stats., declares certain repeated violations of conservation laws to be punishable in that manner and thus criminal violations. Section 23.50(4), Stats., explicitly states that the criminal procedure of ch. 968, Stats., rather than the civil forfeiture procedure of ch. 23, Stats., is to be used for a criminal prosecution. "Where a fine or imprisonment, or both, is imposed by a statute enumerated in sub. (1). the procedure in ch. 968 shall apply." Chapter 968, Stats., is part of the criminal procedure code and governs the commencement of all criminal prosecutions. Every criminal prosecution against a natural person must be commenced by the filing of a complaint or an indictment, sec. 967.05(1), Stats. A criminal complaint is to be issued by a district attorney or by a judge, sec. 968.02, Stats. By contrast, a conservation citation may be issued by an enforcing officer as provided in sec. 23.62(1), Stats.
In the decision of State v. White, 97 Wis.2d 193,295 N.W.2d 346 (1980), the Wisconsin Supreme Court considered the argument that a uniform traffic citation, similar to the citation here in question, could serve as the basis for a criminal prosecution. That argument, rejected by the court, was founded upon sec.345.11, Stats. (1977), which arguably required use of the uniform traffic citation to initiate prosecution for criminal moving traffic violations. Here there clearly is no basis for that argument in that the citation procedure of ch. 23, Stats., is expressly declared to have no application in a criminal proceeding.
Every criminal complaint must set out the essential facts demonstrating probable cause, a standard defined in the decision of State ex rel. Evanow v. Seraphim, 40 Wis.2d 223, 230,161 N.W.2d 369 (1968), in the form of five questions:
 What is the charge? Who is charged? When and Where is the offense alleged to have taken place? Why is this particular person being charged? . . . Who says so?
A citation which does not include the fact of the previous game law violation and which does not disclose sec. 29.995, Stats., to be a basis of the prosecution certainly would be insufficient as to the first question above. It is also entirely possible that a court might find that a *Page 138 
particular uniform citation fails to answer satisfactorily the fourth question. White, 97 Wis.2d at 205.
The initiation and prosecution of criminal violations are governed by the Wisconsin criminal procedure code which provides constitutional and procedural protections to every person accused of a crime. Chs. 967 through 979, Stats. There exists no valid legal proceeding to which the penalty provisions of sec. 29.995, Stats., could apply until the prosecution is commenced in the manner specified at sec. 967.05, Stats. At the point such a prosecution is commenced it must then proceed according to the criminal procedure code and the person accused is entitled to the same constitutional and procedural protections available to other criminal defendants. Moreover, certain rights and protections guaranteed by the United States Constitution, the Wisconsin Constitution and the criminal procedure code relate to the investigatory process and have application before the formal commencement of a criminal proceeding. Basically, the person who may later be accused of a violation subject to sec. 29.995, Stats., is entitled to the same protections and rights as is an individual who may be accused of committing any other crime.
One obvious area of difficulty, noted as an example in your request for this opinion, arises when a warden conducts an interrogation of a person before or during the issuance of a civil forfeiture citation pursuant to sec. 23.62, Stats. The United States Supreme Court has ruled that no statement made to a law enforcement officer in the course of a custodial interrogation and in the absence of counsel may be offered at trial as part of the prosecution case-in-chief unless the defendant is first given specific warnings and thereafter waives the rights prescribed in those warnings, Miranda v. Arizona,384 U.S. 436 (1966). "Custodial interrogation" was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. A law enforcement officer need not give a Miranda warning to everyone who is interviewed as part of a general on-the-scene effort to learn what has occurred. State v. Kraimer,99 Wis.2d 306, 329, 298 N.W.2d 568 (1980). If, however, during a noncustodial interrogation the officer begins to suspect that the person being interviewed committed a crime and decides, for that reason, that the person will not be permitted to leave, it becomes at that point a custodial interrogation *Page 139 
and Miranda warnings are required. State v. Fillyaw,104 Wis.2d 700, 722, 312 N.W.2d 795 (1981).
The question presented is whether interrogation before or during the issuance of a citation constitutes "custodial interrogation." I believe that there is a substantial basis to conclude that the issuance of a citation constitutes the assertion of custodial control over an accused person. Moreover, it is also possible that in a particular circumstance, a court may conclude that interrogation by a warden prior to actual issuance of a citation was custodial, thus necessitating thatMiranda warnings be given, particularly interrogation that continued after the warden believed that there was already probable cause to issue a citation.
Wisconsin law permits a game warden to undertake temporary questioning of a person when the officer reasonably suspects that the individual is involved in a game violation, sec. 23.58, Stats. At the point that the warden has probable cause to believe that an individual is violating or has violated the game laws, he or she may issue a citation, sec. 23.62, Stats. Section 23.63. Stats., indicates clearly that after a citation has been issued, it is then necessary to arrange "the release" of the defendant.
 After the enforcing officer has issued a citation, the officer:
(1) May release the defendant;
(2) Shall release the defendant when he or she:
(a) Makes a deposit under s. 23.66; or
 (b) Makes a deposit and stipulation of no contest under s. 23.67.
 (3) Shall proceed under s. 23.57, if the defendant is not released.
At the point that the citation is issued, the person to whom it has been issued is in custody pending a release or arrest pursuant to the above statute. Clearly, any interrogation after the issuance of a citation would be custodial interrogation and aMiranda warning would be necessary in order to be able to use in a criminal prosecution a statement obtained. An interrogation pursuant to sec. 23.58, Stats., noncustodial at the outset, may shift to being custodial in nature, depending upon the intent of the interrogating officer and the factual circumstances of the interrogation. It is not possible to fix a *Page 140 
crystalline point at which a noncustodial interrogation becomes custodial in nature other than to indicate simply that when the person subject to the interrogation is no longer free to leave, based upon indication of a game law violation, the interrogation is at that point arguably custodial.
The fact that a warden does not realize at the point that a citation is issued that the accused is liable for prosecution under sec. 29.995, Stats., does not change the applicability of the Miranda doctrine. A warden may well not know at the point a citation is issued that the accused person has been convicted of a prior game law violation so as to justify a criminal prosecution. A criminal prosecution is, however, certainly a possibility whenever a citation is issued and presumably there will be only few instances in which a warden is certain that the repeater statute cannot apply. A warden issuing a citation is in a situation very similar to that of an agent of the Internal Revenue Service whose investigation may lead either to civil or to criminal action. The fact that an IRS agent did not know that his interrogation would lead to a criminal charge was held not to excuse the failure to offer a Miranda warning prior to interrogation of a suspect in custody. Mathis v. United States,391 U.S. 1, 4 (1968). The requirement of the Miranda doctrine is founded upon the constitutional right of the accused and thus does not depend upon subjective knowledge of the warden.
The application of the Miranda doctrine in the enforcement of game laws may cause administrative difficulty and I wish, therefore, to make clear the limited and specific effect of a failure to offer the Miranda warning prior to a custodial interrogation. The failure to give the Miranda warning means that a statement taken in the course of that interrogation may later be excluded in a criminal trial. The failure to give the warning does not invalidate an otherwise proper arrest nor does it require exclusion of evidence other than the defendant's statement. Michigan v. Tucker, 417 U.S. 433 (1974). Indeed, it is even possible that an excluded statement may be admitted after the defense portion of a trial to impeach the testimony of the defendant. Harris v. New York, 401 U.S. 222 (1971); Oregon v.Hass, 420 U.S. 714 (1975). The failure to give a Miranda warning prior to a custodial interrogation may limit drastically the value of *Page 141 
any statement obtained in that interrogation but it need not otherwise jeopardize a subsequent criminal prosecution.
BCL:DTF