STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert E. SUTTON, Defendant-Appellant.

Court of Appeals

*No. 92–3132–FT. Submitted on briefs April 29, 1993.—Decided June 15, 1993.*

(Also reported in 503 N.W.2d 326.)

710

On behalf of the defendant-appellant, the cause was submitted on the brief of *Dennis P. Coffey* of *Coffey, Coffey & Geraghty* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad A. Vorpahl*, assistant district attorney.

Before Cane, P.J., LaRocque and Myse, JJ.[1]

CANE, P.J.  Robert Sutton appeals an order revoking his operating privileges for one year because of his refusal to submit to a chemical test under sec. 343.305, Stats.[2] He argues that the revocation was invalid because the arresting officer mistakenly informed him that refusal to submit to a chemical test could result in a jail penalty, and because the arresting officer did not issue a citation prior to requesting that Sutton submit to a chemical test. We affirm the revocation because even if an error was made by the arresting officer regarding jail time, the officer substantially complied with the requirements of sec. 343.305(4), Stats., and because sec. 343.305 does not require that a citation be issued before a suspect is asked to submit to a chemical test.

Officer Jay Novak stopped Sutton's car after witnessing it proceed through a flashing red light and make a turn without stopping. After the stop, Novak noticed an odor of alcohol emanating from Sutton's breath and that Sutton's speech was slow and slurred. Novak requested that Sutton perform some field sobriety tests. Sutton performed these tests inadequately and was then placed under arrest for operating a motor

---

[1] This is a three-judge decision pursuant to the Chief Judge's June 10, 1993 order.

[2] This is an expedited appeal under Rule 809.17, Stats.

vehicle while intoxicated. Sutton was transported to the police station, where Novak advised him of the implied consent law regarding submitting to a chemical test for intoxication. Novak then requested that Sutton submit to a chemical test for intoxication.

Although Sutton had been arrested at this point, no citation had been issued. Sutton stated that he would not submit to such a test and kept interrupting Novak's attempts to advise him of the penalties attached to a refusal to submit. Although not certain, Novak testified that he may have erroneously informed Sutton that the consequences of a refusal to submit included a possible jail sentence. Novak prepared a Notice of Intent to Revoke Operating Privilege form and entered a "refusal" on the Intoxilyzer test card. Sutton was subsequently released.

After a hearing relative to Sutton's refusal, the trial court found Sutton's refusal unreasonable and ordered his driving license revoked for one year. Sutton appeals that order.

Sutton first argues that Novak's recitation of potential penalties for a refusal to submit to a test was erroneous and not in substantial compliance with the procedure established by sec. 343.305(4), Stats. When law enforcement officers fail to substantially comply with sec. 343.305(4), a defendant's driver's license cannot be revoked for refusing to submit to chemical tests. *See State v. Wilke*, 152 Wis. 2d 243, 249–50, 448 N.W.2d 13, 15 (Ct. App. 1989). Interpretation of sec. 343.305 and application of that statute to a set of facts presents a question of law that we review independently of the trial court. *See id.* at 247, 448 N.W.2d at 14. When requesting that a suspect submit to a chemical test, the officer must inform the person of the

consequences of (a) refusing to submit and, (b) having a chemical test result indicate that he or she was driving with a prohibited blood alcohol concentration. For the purpose of this opinion, we assume that Novak did tell Sutton that a possible jail sentence, in addition to suspension or revocation of his license, was a consequence of a refusal to submit to chemical testing. In fact, a jail sentence is not a possible consequence of such a refusal.

Sutton contends that this alleged error is analogous to the error which required reversal of a revocation for failure to submit to chemical testing in *Wilke*. In *Wilke*, the arresting officer, when informing the defendant of the consequences of both a refusal to submit and a test result indicating an inappropriate BAC, omitted a portion of the information relating to additional penalties beyond license suspension for producing an inappropriate BAC test result. We concluded that:

> This failure was partial—not substantial—compliance. Although not requiring complete compliance, substantial compliance does require "actual compliance in respect to the substance essential to every reasonable objective of the statute."

*Wilke*, 152 Wis. 2d at 250, 448 N.W.2d at 15 (citing *Midwest Mut. Ins. Co. v. Nicolazzi*, 138 Wis. 2d 192, 200, 405 N.W.2d 732, 736 (Ct. App. 1987)). The reasonable objective of sec. 343.305(4), Stats., is to require the officer to inform the arrestee of the possible sanctions resulting from his taking or refusing to take the test. In *Wilke*, we concluded that to obtain substantial compliance, the officer must not understate the penalties for

714

either refusal to take the test or taking the test and obtaining an inappropriate test result.

■

Here, we conclude that if the penalties are overstated, such overstatement is still substantial compliance unless the overstatement prejudices the defendant. In this case, the officer overstated, rather than understated, the penalties for refusing to submit to chemical testing. Arguably, if Sutton had taken the test after being erroneously informed that a refusal could cause jail time, then the officer's erroneous information would have been prejudicial to Sutton because he would have made his choice to take the test on the basis of an erroneous belief.

■

If Sutton believed Novak, he was aware of greater possible sanctions than he actually faced. This overstatement created a greater incentive for him to take the test. Nevertheless, he still refused to submit to testing. Because Sutton refused, he was not prejudiced by the officer overstating the possible sanctions for refusal. The officer's information therefore did not prejudice Sutton and was in substantial compliance with sec. 343.305(4), Stats.

Second, Sutton argues that the revocation is invalid because Novak failed to issue a citation prior to requesting the chemical test. Section 343.305(3), Stats., provides in part:

(a) Upon arrest of a person for violation of s. 346.63(1) . . . or a local ordinance in conformity therewith . . . a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine . . . .

Section 343.305(9) governs notices of intent and states in part:

>    (a)   . . . The notice of intent to revoke the person's operating privilege shall contain substantially all of the following information:
>
>    1.   That prior to a request under sub. (3)(a), the officer had placed the person under arrest *and issued a citation, if appropriate,* for a violation of s. 346.63(1) . . . or a local ordinance in conformity therewith . . . . (Emphasis added.)

Sutton argues that these two sections read in conjunction require that a citation be issued prior to a request that a person submit to a chemical test.

This issue is one of statutory interpretation, a question of law that this court reviews independently of the trial court. *State v. Phillips,* 172 Wis. 2d 391, 394, 493 N.W.2d 238, 240 (Ct. App. 1992). Unless there is an ambiguity, the plain meaning of a statute's terms must be followed. *Id.* A statute is ambiguous if well-informed individuals could understand it in two or more different senses. *Id.* A court may deem a statute ambiguous because of its interaction with a separate statute. *Id.* Here, the wording of sec. 343.305(3) and subsec. (9), Stats., creates an ambiguity concerning whether issuance of a citation is a mandatory prerequisite to requesting that a person submit to a chemical test. We thus look to the scope, history, context, subject matter and purpose of the statute to discern legislative intent. *Employers Ins. v. Smith,* 154 Wis. 2d 199, 226, 453 N.W.2d 856, 867 (1990).

Prior to 1984, sec. 343.305(3)(a), Stats., then numbered sec. 343.305(2)(b), Stats., (1981–82),[3] provided:

> A law enforcement officer may, upon arrest of *and issuance of a citation to* a person for violation of s. 346.63(1) or a local ordinance in conformity therewith, or *upon arrest* for a violation of s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (1). (Emphasis added.)

The section was amended, effective May 19, 1984, to delete the above emphasized words. *See* sec. 4, 1983 Wis. Act 535. The legislative drafting record for 1983 Wis. Act 535 contains a letter dated January 14, 1983, from Lowell Jackson, Secretary of the Department of Transportation, to Senator Fred Risser and Representative Thomas Loftus. The letter noted the following about this change:

> Note: Wisconsin is the only state requiring an officer to arrest a DWI subject and issue a citation prior to requiring the subject to submit to an evidentiary test. "Our" rules of evidence only require that an arrest be made prior to the evidentiary test(s) and that requirement should be kept in place.

In addition, the drafting record contains an analysis of the amendments prepared by the Legislative Reference Bureau. The analysis states in part:

---

[3] Section 343.305(2)(b), Stats., was repealed and recreated, as amended, as sec. 343.305(3)(a), Stats. *See* sec. 29, 1987 Wis. Act 3.

(2) IMPLIED CONSENT CHANGES. Under present law, a law enforcement officer must issue a citation before requesting a person to take a chemical test for intoxication. This proposal removes that requirement.

These items indicate that the intent of the legislature in amending sec. 343.305 was to remove the requirement that an officer issue a citation before requesting a person to take a chemical test. We conclude the trial court correctly interpreted secs. 343.305(3)(a) and (9)(a)1 as not requiring issuance of a citation prior to requesting that a person submit to a chemical test.

*By the Court.*—Order affirmed.